**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

| | |
|---|---|
| IN RE | |
| BRIAN K. JACKSON<br>CANDY JOY JACKSON | CASE NO. 20-50811 |
| | CHAPTER 7 |
| DEBTORS | |
| LILLIAN JEAN MAYO | PLAINTIFF |
| V. | ADV. NO. 20-5030 |
| BRIAN K. JACKSON<br>CANDY JOY JACKSON | DEFENDANTS |

**MEMORANDUM OPINION GRANTING
MOTION TO DISMISS COMPLAINT**

Lillian Jean Mayo ("Mayo") filed this action against her son Brian Jackson and daughter-in-law Candy Joy Jackson (collectively, the "Debtors") seeking to except certain debts from Debtors' discharge under § 523(a)(2)(A), (a)(4), and (a)(6).[1] The Complaint centers around 43 acres of real property in Woodford County, Kentucky that Mayo transferred to Debtors (the "43 Acres"), a subsequent mortgage Debtors granted to Kentucky Bank against the 43 Acres, and an unrelated loan that Debtors received from Mayo in 2009. In support of Mayo's claims, the Complaint relies primarily on findings made in state court litigation and a subsequent settlement between the parties.

This matter is before the Court on Debtors' Motion to Dismiss the Complaint [ECF No. 8 (the "Motion")]. Mayo filed an objection to the Motion [ECF No. 13], Debtors filed a reply

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. References to the Federal Rules of Bankruptcy Procedure appear as "Bankruptcy Rule ___," and references to the Federal Rules of Civil Procedure appear as "Civil Rule ___."

[ECF No. 17], and the Court held a hearing. For the reasons below, the Court will grant the Motion and dismiss the Complaint.

## FACTS ALLEGED IN COMPLAINT

Mayo's Complaint and its exhibits allege the following facts.[2]

In 2007, Mayo transferred the 43 Acres to Debtors on the promise that Debtors would build a home for Mayo. Mayo retained a $225,000 mortgage against the 43 Acres (the "Mayo Mortgage"). Debtors never built the home, and, in 2010, Debtors fraudulently induced Mayo to release the Mayo Mortgage. Two years later, Debtors borrowed money from Kentucky Bank (the "Kentucky Bank Debt") and granted the bank a mortgage secured by the 43 Acres (the "Kentucky Bank Mortgage").

Unrelated to the 43 Acres, Mayo loaned Debtors money in 2009 to pay off a mortgage against their property in Lexington, Kentucky (the "SBB Loan"). Mayo did not receive a mortgage against Debtors' Lexington property to secure the SBB Loan.[3]

In 2013, Mayo filed a lawsuit against Debtors in the Woodford County (Kentucky) Circuit Court (the "State Court Lawsuit" in the "State Court"), which alleged causes of action for (1) constructive trust, (2) unjust enrichment, (3) conversion, (4) trespass to chattels, (5) fraud, and (6) punitive damages based on Debtors' actions relating to the 43 Acres. The State Court Lawsuit did not include any causes of action related to the Kentucky Bank Mortgage.[4] The State Court held a three-day jury trial in 2016, and the jury reached a verdict for Mayo on all counts.

---

[2] The Complaint attaches and incorporates the State Court's "Findings of Fact, Conclusions of Law and Judgment", a "Global Settlement Agreement", and an "Agreed Judgment and Settlement." The Court may consider the Complaint's attachments in evaluating the Motion. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto….").

[3] The Complaint does not allege that Mayo failed to receive a mortgage against the Lexington property due to Debtors' misconduct.

[4] Mayo's counsel confirmed this during oral argument.

The State Court found Debtors liable for fraud, imposed a constructive trust against the 43 Acres, and assessed a $500,000 punitive damages award. [ECF No. 1-1 (the "State Court Judgment").] The State Court did not enter a compensatory damages award for fraud because "[i]t is the [c]ourt's understanding that the jury's award for fraud would be coextensive with the value of the constructive trust, and the jury, sensibly, did not allow for a double recovery." [*Id*.] The State Court Judgment is silent as to the SBB Loan, and the Complaint does not allege that the State Court Lawsuit involved claims stemming from the SBB Loan.

Debtors appealed the State Court Judgment. While the appeal was pending, the parties entered into a settlement agreement dated November 29, 2016. [ECF No. 1-4 (the "Settlement").] The Settlement required, *inter alia*, that:

> 1. As previously ordered, [Debtors] will sign a quitclaim deed to Ms. Mayo for the [43 Acres], which includes the log home and barn. . . .
>
> 2. [Debtors] will deed the 75-acre tract[5] to Ms. Mayo to satisfy the punitive damages award. . . .
>
> 4. [Debtors] will service the Kentucky Bank loan on the 43 [A]cres until the property sells. [Debtors] will in conjunction with this settlement, mortgage the Berea property, which will reduce the debt secured by [the 43 Acres] by approximately $80,000 as discussed earlier.
>
> 5. [Mayo] and [Debtors] will sign an agreed judgment which (a) holds Ms. Mayo harmless for the amount owed to Kentucky Bank, (b) provides that [Debtors] will pay to Ms. Mayo any portion of the [Kentucky] Bank mortgage debt unpaid at the time of the sale over 30 years at the current interest rate being paid to Kentucky Bank, (c) acknowledges and agrees that this [Kentucky] Bank debt is not dischargeable in bankruptcy, (d) provides written documentation of the outstanding balance of the [SBB Loan] and health insurance loan, and [Debtors'] continuing obligation to pay both amounts. [Debtors] will add $175 per month to the [SBB Loan] to cover Ms. Mayo's health insurance for her life.

[Settlement, p. 1.] Subsequently, the State Court entered an "Agreed Judgment and Settlement"

---

[5] Mayo deeded the 75-acres to Debtors in 2008. The State Court allowed Debtors' continued ownership of the property. [State Court Judgment, p. 22.]

3

in 2018, which recognized the Settlement and dismissed the State Court Lawsuit as settled. [ECF No. 1-3 (the "Agreed Judgment").]

Debtors filed their chapter 7 petition on May 27, 2020. Debtors scheduled a $167,277 debt to Kentucky Bank and a $157,810 debt to Mayo for the SBB Loan.

Mayo timely filed the Complaint commencing this adversary proceeding. Count I of the Complaint seeks to except the Kentucky Bank Debt from Debtors' discharge under § 523(a)(2)(A). Count II seeks to except Debtors' obligation to hold Mayo harmless for the Kentucky Bank Debt from their discharge under § 523(a)(2)(A). Count III seeks to except the SBB Loan from Debtors' discharge under § 523(a)(2)(A), (a)(4), and (a)(6).

At the hearing on the Motion, Mayo voluntarily dismissed Count I, and Debtors withdrew their defense based on improper service. This matter is ripe for decision.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding. 28 U.S.C. § 1334(b). Venue is proper in this District. 28 U.S.C. § 1409. This is a core proceeding, 28 U.S.C. § 157(b)(2)(I), and the parties have consented to the Court's entry of a final order adjudicating this matter.

## STANDARD OF REVIEW

Under Civil Rule 12(b)(6), a party may assert by motion the "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6), *made applicable by* FED. R. BANKR. P. 7012(b). Civil Rule 8(a)(2), applicable by Bankruptcy Rule 7008(a), provides that "[a] pleading that states a claim for relief must contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Additionally, in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b), *made applicable by* FED. R. BANKR. P. 7009. This requirement applies to

4

allegations of fraud made pursuant to § 523(a)(2)(A) and (a)(4). *See Crenshaw v. Lewis (In re Lewis)*, Nos. 19-33143, 20-3006, 2020 Bankr. LEXIS 1847, at *16 (Bankr. S.D. Ohio June 29, 2020) (§ 523(a)(4)); *Rice v. Morse (In re Morse)*, 504 B.R. 462, 469 (Bankr. E.D. Tenn. 2014) (§ 523(a)(2)(A)).

To survive a motion to dismiss under Civil Rule 12(b)(6), the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "[D]etailed factual allegations" are unnecessary, but "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). "A complaint may be dismissed for failure to state a claim upon which relief can be granted when there is no legal basis for the claim asserted, the facts are insufficient to make out a valid claim, or there is an insurmountable bar to relief on the face of the complaint." *Breckenridge v. Johnson*, Case No. 2:07-cv-0345, 2007 U.S. Dist. LEXIS 83856, at *2 (S.D. Ohio Nov. 13, 2007) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)).

## ANALYSIS

### I. Count II Fails to Allege Sufficient Facts to State a Cause of Action Under § 523(a)(2)(A).

Count II seeks a judgment excepting Debtors' obligation to hold Mayo harmless for the Kentucky Bank Debt pursuant to § 523(a)(2)(A). Mayo claims the waiver of discharge in the Settlement compels this result. Alternatively, Mayo posits that the hold harmless obligation in the Settlement arose from Debtors' fraud (as found by the State Court) in inducing the release of

5

the Mayo Mortgage. Debtors counter that prepetition waivers of discharge are void as against public policy, and the Complaint's factual allegations do not support a cause of action under § 523(a)(2)(A). The Court agrees with Debtors' arguments.

    A. <u>Prepetition Discharge Waivers Violate Public Policy and are Unenforceable</u>.

As reviewed above, the Settlement required the parties to sign an agreed judgment that acknowledged that the Kentucky Bank Debt is not dischargeable in bankruptcy. In the Sixth Circuit, prepetition discharge waivers are held to violate public policy and are unenforceable.

> A pre-petition stipulation in a state-court action waiving a debtor's right to obtain a discharge of a specific debt in a future bankruptcy case is void because it offends the public policy of promoting a fresh start for individual debtors. Because it is executed before bankruptcy proceedings begin and is not approved by a bankruptcy court, such pre-petition waivers of discharge do not satisfy the statutory requirements for a waiver of discharge under § 727(a)(10).

*Lichtenstein v. Barbanel*, 161 F. App'x 461, 468 (6th Cir. 2005); *see also Klingman v. Levinson*, 831 F.2d 1292, 1292-96, 1296 n.3 (7th Cir. 1987) (observing in *dictum* that public policy reasons preclude a debtor from contracting away a right to obtain a discharge in a future bankruptcy on a specific debt); *The Infinity Grp., LLC v. Lucas (In re Lucas)*, 477 B.R. 236, 247 (Bankr. M.D. Ala. 2012) (stating that "stipulations to the effect that a debt will not discharge in a subsequent bankruptcy case are not enforceable as they violate public policy"). Mayo cites no case reaching a different result. Her policy argument as to why the waiver should be enforced in this case cannot overcome clear Sixth Circuit precedent holding that prepetition waivers of discharge are void. Accordingly, the Settlement's purported discharge waiver is unenforceable.[6]

---

[6] Mayo also argues that the Settlement's purported discharge waiver applies to the SBB Loan addressed in Count III. This argument misconstrues the Settlement, which states only that the "Ky Bank debt is not dischargeable in bankruptcy." [Settlement, ¶ 5.] However, even if the pertinent language in the Settlement applied to the SBB Loan, it would be unenforceable under Sixth Circuit precedent.

  B. <u>The Complaint lacks a factual basis for asserting Debtors' hold harmless obligation to Mayo can be excepted from Debtors' discharge</u>.

Mayo failed to adequately plead facts to support her contention that Debtors obtained the Settlement by fraud. To state a claim under § 523(a)(2)(A), a creditor must allege, with particularity, facts that establish: "(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss." *Rembert v. AT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998) (footnote omitted). The Supreme Court has explained:

> Section 523(a)(2) covers only situations in which "money, property, [or] services" are "obtained by . . . actual fraud," and results in a debt. See *Cohen* v. *de la Cruz*, 523 U.S. 213, 218, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998). The statutory phrase "obtained by" is an important limitation on the reach of the provision. Section 523(a)(2)(A) applies only when the fraudulent conduct occurs at the *inception of the debt*, *i.e.,* when the debtor commits a fraudulent act to induce the creditor to part with his money, property, services, or credit. The logical conclusion then is that "actual fraud"—as it is used in the statute—covers only those situations in which some sort of fraudulent conduct caused the creditor to enter into a transaction with the debtor.

*Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1591 (2016) (emphasis in original). And, importantly, "[e]xceptions to discharge are narrowly construed in the debtor's favor." *HIJ Indus. v. Roy (In re Roy)*, 565 B.R. 820, 830 (Bankr. E.D. Ky. 2017) (citing *In re Zwosta*, 395 B.R. 378, 382-83 (B.A.P. 6th Cir. 2008)).

The Complaint alleges that the fraud occurred when Debtors obtained the release of the Mayo Mortgage in 2010. However, Debtors incurred the debt at issue in Count II when the parties executed the Settlement in 2016. The Settlement created Debtors' hold harmless obligation to Mayo for the Kentucky Bank Debt. The Complaint lacks factual allegations supporting the required § 523(a)(2)(A) elements as to the debts Debtors incurred in the

7

Settlement. Accordingly, Count II fails to allege sufficient facts to sustain a cause of action under § 523(a)(2)(A) and shall be dismissed.

## II. Count III Fails to Allege Sufficient Facts Related to the SBB Loan to State a Claim under § 523(a)(2)(A), (a)(4), or (a)(6).

Count III seeks to except the Debtors' debt owed to Mayo for the SBB Loan from their discharge under three subsections of § 523(a), to-wit: § 523(a)(2)(A), (a)(4), and (a)(6).

### A. Count III is an impermissible shotgun pleading.

As an initial matter, Mayo's inclusion of three separate causes of action in a single count frustrates any evaluation of each cause of action's factual bases. A failure to assert separate causes of action or claims for relief is considered "shotgun pleading" in violation of Civil Rule 10(b).[7] *See*, *e.g.*, *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 393 (6th Cir. 2020) (stating that a complaint that fails to separate causes of action or claims for relief into separate counts is a "shotgun pleading" that violates Civil Rule 10(b)). Although this can be grounds for dismissal, "the preferred course of action in the Sixth Circuit is to permit the plaintiff to re-plead her case." *See Young v. Donahoe*, No. 1:11-cv-0105, 2013 U.S. Dist. LEXIS 135709, at *13 (M.D. Tenn. July 8, 2013) (collecting cases). This notwithstanding, Count III's fatal flaw is that the Complaint fails to allege sufficient facts to support excepting the SBB Loan from Debtors' discharge under § 523(a)(2)(A), (a)(4), or (a)(6).

### B. The Settlement and Agreed Judgment Did Not Merge with the State Court Judgment.

Mayo's primary argument in Count III is that the Settlement and Agreed Judgment merged the SBB Loan with the State Court Judgment for fraud. [Complaint, ¶ 42.] Simply put,

---

[7] Civil Rule 10(b), made applicable by Bankruptcy Rule 7010, provides that claims should be set out "in numbered paragraphs, each limited as far as practicable to a single set of circumstances" and that "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." FED. R. CIV. P. 10(b).

there is no merger clause in the Settlement. To the extent the Settlement references the SBB Loan, it merely required that the parties sign an agreed judgment providing "written documentation of the outstanding balance of the [SBB Loan] . . . ." [Settlement, ¶ 5.] The Agreed Judgment merely incorporates—and does not expand upon—the Settlement.[8]

    C.  <u>The Complaint does not State a Claim under § 523(a)(2)(A).</u>

As to the claim under § 523(a)(2)(A), the analysis set forth above regarding Count II applies here with equal force. The State Court Litigation did not address the SBB Loan, and the Complaint does not allege at all, let alone with particularity, that Debtors obtained the SBB Loan by fraud. Rather, the Complaint merely states that Debtors' fraud in inducing the Mayo Mortgage release may be construed as fraud in obtaining the SBB Loan. Without a factual basis alleged for this claim, Mayo fails to state a plausible § 523(a)(2)(A) claim upon which relief can be granted.

    D.  <u>The Complaint does not State a Claim under § 523(a)(4).</u>

Section 523(a)(4) excepts debts from a debtor's discharge if the debt was incurred by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). To properly allege a claim under § 523(a)(4) based on defalcation in a fiduciary capacity requires factual allegations, plead with particularity, on three elements: "(1) a pre-existing fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss." *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005) (citation omitted). The nature of the fiduciary relationship required to trigger liability

---

[8] Even if the Settlement did contain a merger clause, the Court would review the underlying transaction to determine whether Mayo sufficiently plead facts to support a non-dischargeability claim. *See Archer v. Warner,* 538 U.S. 314, 322 (2003) (holding that a bankruptcy court could look behind a settlement to examine the dischargeability of the debt); *Gray Tybee II, LLC v. Coker (In re Coker)*, 569 B.R. 521, 529 (Bankr. S.D. Ga. 2017) (holding that neither a settlement nor a merger clause prevents the court from inquiring into the true nature of the debt).

under § 523(a)(4) is determined by federal law. *Id.* (citation omitted). As the Sixth Circuit has explained:

> We construe the term "fiduciary capacity" found in the defalcation provision of § 523(a)(4) narrower than we construe the term "fiduciary relationship" in other contexts. Specifically, defalcation is "limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." A fiduciary capacity under § 523(a)(4) is "limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor."

*Poynter v. Great Am. Ins. Co. (In re Poynter)*, 535 F. App'x 479, 481 (6th Cir. 2013) (citations omitted).

The Complaint alleges that the fiduciary relationship between Mayo and Debtors was that Debtors "both held positions of trust [with Mayo], placing them in a fiduciary capacity." [Complaint, ¶ 39.] However, this common law fiduciary relationship is insufficient for § 523(a)(4), and the Complaint contains no factual allegations alleging either an express or technical trust. *See Blaszak* at 391; *Poynter* at 481. Further, the Complaint only alleges that Debtors committed fraud in a fiduciary capacity by having Mayo release the Mayo Mortgage, which occurred a year after Debtors obtained the SBB Loan from Mayo. Stated differently, the Complaint identifies the SBB Loan as a separate transaction that predates the fraudulent release of the Mayo Mortgage. The Complaint does not allege facts creating a nexus between the release of the Mayo Mortgage and the SBB Loan. Accordingly, Count III does not state a plausible claim under § 523(a)(4).

  E. <u>The Complaint does not State a Claim under § 523(a)(6).</u>

The Bankruptcy Code does not discharge an individual's debt that a creditor can prove was "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). To be "willful," the actor must "intend the *consequences* of an act, not simply the act itself." *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998) (citation

omitted); *see also Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 464 (6th Cir. 1999) (adopting the subjective approach, in which a debt is non-dischargeable under § 523(a)(6) only if the debtor intended to cause harm or knew that harm was a substantially certain consequence of his or her behavior). An act is malicious if it is "'in conscious disregard of one's duties or without just cause or excuse . . .'" *MarketGraphics Research Grp., Inc. v. Berge (In re Berge)*, 953 F.3d 907, 915 (6th Cir. 2020) (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)).

Here, the Complaint fails to allege facts sufficient to show that Debtors caused a willful and malicious injury to Mayo or her property related to the SBB Loan. Mayo's Complaint impermissibly asserts legal conclusions couched as factual allegations with respect to this cause of action. Moreover, the Complaint does not allege willful or malicious conduct related to the SBB Loan, and instead alleges misconduct unrelated to the SBB Loan concerning the Mayo Mortgage. [*See* Complaint, ¶ 41 ("The release of the lien through fraud and deception constitutes a willful and malicious injury by the [Debtors] to Ms. Mayo within the scope of 11 U.S.C. Section 523(a)(6).").] Accordingly, Count III does not state a plausible claim under § 523(a)(6) concerning the SBB Loan.

## CONCLUSION

The Complaint does not allege sufficient facts to support the statutory causes of action asserted in Counts II and III. Accordingly, Debtors' Motion to Dismiss [ECF No. 8] will be GRANTED. A separate order will be entered in conformity herewith.

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Friday, December 18, 2020**
**(tnw)**